IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

Civil Action No.:

NECTALIER GONZALEZ, III and
STEPHANIE GONZALEZ,

        Plaintiffs,

v.

WELLS FARGO HOME MORTGAGE a division of WELLS FARGO BANK, N.A.,

        Defendants.
_____/

## COMPLAINT

Plaintiffs, NECTALIER GONZALEZ, III and STEPHANIE GONZALEZ residing at, 68 Claudia Lane Stafford, New Jersey 08050 alleges as follows**:**

## INTRODUCTION

This is a civil action brought by Plaintiffs due to the unsuccessful attempts at obtaining meaningful loss mitigation in good faith of their completely submitted loan modification package to Defendant, WELLS FARGO HOME MORTGAGE a division of WELLS FARGO BANK, N.A., also known as "Servicer." The Bureau of Consumer Financial Protection (the Bureau) created Regulation X, which implements the Real Estate Settlement Procedures Act of 1974 (RESPA) and the official interpretation of the regulation. The proposed amendments implement the Dodd-Frank Wall Street Reform and Consumer Protection Act (Dodd-Frank Act) provisions regarding mortgage loan servicing. Regulation X to addresses seven servicer obligations: To correct errors asserted by mortgage loan borrowers; to provide information requested by mortgage loan borrowers; to ensure that a reasonable basis exists to obtain force-placed insurance; to establish reasonable information management policies and procedures; to provide

information about mortgage loss mitigation options to delinquent borrowers; to provide delinquent borrowers access to servicer personnel with continuity of contact about the borrower's mortgage loan account; and to evaluate borrowers' applications for available loss mitigation options.

## PARTIES

NECTALIER GONZALEZ, III and STEPHANIE GONZALEZ are owners of the property located at 68 Claudia Lane, Stafford, New Jersey 08050, which is the subject property of an impending foreclosure action in the New Jersey Superior Court (Docket No. F-011103-16). Plaintiff is also referred to as "Borrower," whereas Borrower invokes the protection of the consumer protection laws and under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et. seq. ("RESPA"); Regulation X, 12 C.F.R. part 1024 ("Regulation X").

Defendant, WELLS FARGO HOME MORTGAGE a division of WELLS FARGO BANK, N.A., is a licensed mortgage servicing company that services home mortgage loans secured by residential properties. It is a Delaware Limited Liability Company with its principal place of business located at 1209 Orange Street New Castle, DE 19801 and conducts business through the United States and the state of New Jersey. As a mortgage servicer, it is subject to specific federal laws and administrative regulations governing its mortgage serving activities. These laws and regulations include, but are not limited to, the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et. seq. (hereinafter RESPA) and Regulation X, 12 C.F.R part 1024, hereinafter "Regulation X."

## JURISDICTION AND VENUE

1. This Court has personal jurisdiction over Defendant because Defendant, itself or through its agents and subsidiaries, transacted business in this District, and because Defendant, itself or

through its agents and subsidiaries, has committed the acts proscribed by the Complaint.

2. This Court has subject-matter jurisdiction over this action because it is brought under Federal consumer financial law, 12 U.S.C. § 5565(a)(1) and presents a federal question, 28 U.S.C. § 1331.

3. Venue is proper in this district under 28 U.S.C. § 1391(b) and 12 U.S.C. § 5564(f) because Defendants do business in this district and part of the events giving rise to the claims took place in this district.

4. Borrowers claim for negligence under the common law of the State of New Jersey also arises from the same transaction and occurrence as the RESPA claim, this Court has supplemental jurisdiction under 28 USC § 1367 to adjudicate the state law negligence claim.

5. In addition to inherent authority, declaratory relief is available under the Declaratory Judgment Act whenever there is a case of actual controversy, and regardless of whether the Plaintiff seeks any other relief. 28 U.S.C. §§ 2201, 2202.

## GENERAL FACTUAL ALLEGATIONS

6. Plaintiffs first purchased their two story family residence on September 26, 2003.

7. Plaintiffs encountered temporary financial difficulties dating back to 2015 and began communications as well as submitted documents to procure a mortgage loan modification from Defendant, as Servicer of their residential mortgage.

8. On April 20, 2016, Plaintiff filed a foreclosure action.

9. Although Defendant had readily available means of locating Plaintiff, Defendant was unable to personally serve Defendants with the proper foreclosure papers.

10. On July 18, 2016, Defendant allegedly published notice in the newspaper of the foreclosure action against Plaintiff.

11. Plaintiff had still not been served with the summons, complaint, foreclosure mediation notice, or intention to foreclose in the related foreclosure action and this caused delay in defending the action.

12. However, Defendant received no actual notice about the action pending that would encroach on his constitutional right to due process concerning his property rights.

13. Defendant continued to move forward with the foreclosure action against Plaintiff, without notice to Plaintiff.

14. On September 15, 2017, after finally learning about the foreclosure action, Plaintiff, through counsel, quickly submitted a complete loan modification application to Defendant.

15. On September 19, 2017, Defendant issued a boilerplate response to Plaintiff stating it would not even review Plaintiff for loss mitigation at all.

16. On September 26, 2017, Plaintiff through counsel mailed, through certified service, a Notice of Error pursuant to 12 CFR 1024.35 and Request for Information. 12 CFR 1024.36.

17. On September 27, 2017, Defendant acknowledged in writing that it received Plaintiff's requests and concerns.

18. Defendant, in bad faith and in contravention to the federal regulations, refuses to review Plaintiff for loss mitigation alternatives to foreclosure.

19. Defendant instead aggressively and expeditiously moved forward with the foreclosure litigation although Defendant is prohibited from doing so in the face of receiving a complete loss mitigation application pursuant to by 12 C.F.R. § 1024.41(g).

20. Defendant failed to provide written notice to Plaintiff of his complete loss mitigation application.

21. Plaintiff by sending a Servicer a Qualified Written Request/Notice of Error placed Defendant on notice that it failed to comply with 12 C.F.R. §1024.41.

22. To date Defendant refuses to comply with its legal duties to properly review and qualify Plaintiff for loss mitigation alternatives after receiving Plaintiffs complete application.

23. Plaintiffs continued to request stay of sheriff's sale through the Court and exhausted his statutory adjournments.

24. Any further delay will cause irreparable harm to Plaintiff.

25. Defendant has also failed to place Plaintiff's foreclosure file on hold during the Servicer error and appeal process.

26. Defendant's misconduct has resulted in Plaintiffs lack of notice and inability to defend the actions against their property.

27. In addition, Defendant's unfair and deceptive acts and practices in connection with the loan modification servicing, which includes; blatantly ignoring Plaintiffs loss mitigation application, charging of premature and unauthorized fees, violation of homeowners' rights and protections during foreclosure, use of false and deceptive tactics.

28. Defendant, by disregarding its mortgage servicer duties, before and during a foreclosure, has resulted in the waste and abuse of taxpayer funds and has damaged Plaintiffs.

29. Under the States' consumer protection laws, Defendant is prohibited from engaging in unfair or deceptive practices with respect to consumers.

30. Defendant has engaged in a pattern of unfair and deceptive practices such as causing delay in decisions on Plaintiff's loss mitigation file, failing to correct and address pertinent errors addressed by Plaintiff/Borrower, failure to conduct loss mitigation review in good faith, and failing to properly comply with federal procedures in the face of an imminent foreclosure sale.

31. As a result, these practices are preventing Borrowers from entering into affordable mortgage payments, which results in increased foreclosures in the States.

## COUNT I – VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND IMPLEMENTING REGULATION X

32. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 31 above.

33. Pursuant to Section 12 C.F. R. §1024.41, when a mortgage servicer receives a loss mitigation application at least 37 days before a scheduled foreclosure sale, that servicer must promptly review the application to determine whether it is complete or incomplete. Defendant was obligated to complete a proper and actual review of Plaintiff's loss mitigation application within 30 days.

34. The protections against sale established by 12 C.F.R. § 1024.41(g) applied, and Defendant as Servicer was prohibited from pursuing a foreclosure sale. Defendant violated its obligations under this provision by failing to take any action to cancel the foreclosure although it received a complete loss mitigation package (180) before the foreclosure sale date.

35. Indeed, Defendant now ignores Plaintiff's requests for information and notice of error and in bad faith, moves forward with violating Plaintiff's due process rights.

36. Servicer had an affirmative obligation under Regulation X to both complete its substantive review of Plaintiffs' loss mitigation before the sale was scheduled, and it was to refrain from proceeding with a foreclosure sale when there was a complete or facially complete loss mitigation application pending.

37. Regulation X (12 C.F.R § 1024.35 (e)) requires that upon receipt of a Notice of

Error, the servicer must respond to the notice by either:

> a) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
>
> b) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the Borrowers right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

38. Defendant completely ignored its obligations under 12 C.F.R. 1024.35, and failed to and refuses to substantively respond to Plaintiff's Qualified Written Request/Notice of Error.

39. Pursuant to 12 C.F.R. §1024.41(a) and 12 U.S.C.§ 2605(f), Plaintiff is expressly authorized to bring a civil action for violations of the Regulation X loss mitigation procedures. Similarly, 12 U.S.C.§ 2605(f), also provides a private right of action for a borrower when a servicer fails to comply with the error resolution procedures.

40. Injunctive relief is available to stop or set aside the foreclosure sale conducted in violation of the dual tracking protections under Regulation X section 1024.41(f). A court would be unable to reverse the consequences flowing from the violation, the loss of the borrower's interest in the home and an award of money damages would not provide to the borrower the relief intended by the regulation, which is to prevent the sale of the borrower's home before a decision has been made on a loss mitigation application.

41. Without injunctive relief, the provisions of RESPA added by the Dodd-Frank Act upon which the regulation was founded are meaningless and would fail to carry out the purpose. Intended by Congress of "avoiding foreclosure."

42. As a result of Defendant's repeated violations of Regulation X's express requirement, Plaintiff has been damaged. These damages include, but are not limited to, attorney's fees and litigation costs expended in the state court foreclosure litigation, costs associated with their fruitless efforts to invoke the RESPA/Regulation X error resolution procedures and emotional distress.

## COUNT II NEGLIGENCE

43. Plaintiffs re-allege and incorporate by reference the allegations in Paragraphs 1 through 38 above.

44. Under RESPA and Regulation X, Servicer had a duty to properly and timely handle Borrowers' loss mitigation in the manner required by 12 C.F.R. 1024.41.

45. Defendant refuses respond to Plaintiff's loss mitigation requests and provide a basic substantive review of Plaintiff's submissions.

46. Pursuant to RESPA and Regulation X, Defendant had a duty to investigate the matters raised in Borrowers' Qualified Written Request/Notice of Error, correct those errors, and respond to Borrowers within the applicable deadlines.

47. Defendant negligently and repeatedly breaches all of its duties under RESPA and Regulation X causing Plaintiff substantial arrears dating back to 2015 through its delay and circumvention of notice to Plaintiffs.

48. Defendant's systemic failure to comply with its own obligations imposed by RESPA and Regulation X are motivated by an effort to obtain unreasonable financial gain by avoiding the cost of implementing adequate policies and procedures, and employing and training qualified personnel.

49. Furthermore, Defendants actions and omissions described above reflect a willful

disregard of a Borrowers' known rights established by RESPA and Regulation X. and accordingly, an award of punitive damages is necessary to vindicate deterrent functions of tort law and induce Defendant to correct the systemic deficiencies giving rise to its repeated failures to comply with its obligations under RESPA and Regulation X.

50. As a result of Defendant's negligence, Plaintiffs have been damaged. Those damages are continuing and ongoing, and are likely to occur again in the future.

### COUNT III. VIOLATIONS OF STATE LAW PROHIBITING UNFAIR AND DECEPTIVE CONSUMER PRACTICES WITH RESPECT TO LOAN SERVICING

51. Plaintiff re-alleges and incorporates by reference the allegations in Paragraphs 1 through 50 above.

52. The loan servicing conduct of Defendant, as described above, constitutes unfair or deceptive practices in violation of the consumer protection laws of the State.

53. Defendant's unlawful conduct has resulted in injury to the States and citizens of the States who have had residential home loans, like Plaintiffs, whose mortgage is serviced by Defendant.

54. The harm sustained by such citizens includes payment of improper fees and charges, unreasonable delays and expenses to obtain loss mitigation relief, improper denial of loss mitigation relief, and loss of homes due to improper, unlawful, or undocumented foreclosures.

55. The harm to the States includes the subversion of the legal processes and the sustained violations of laws.

56. The State of New Jersey has had to incur substantial expenses in the investigations and attempts to obtain remedies for the unlawful conduct such as Defendant's.

57. Defendant through use of boilerplate, nonresponsive language in addressing borrowers'

notice of error (NOE), failed to comply with time limits required to respond to borrower's loss mitigation application, in violation of Real Estate Settlement Procedures Act (RESPA) and its implementing regulation (Regulation X).

58.   Defendant failed to actually inform Defendant of his loss mitigation alternatives, failed to actually evaluate Plaintiff for loss mitigation, failed to review submissions within express time limits provided by law, and in bad faith, unilaterally refuses to perform loss mitigation with Plaintiffs as the sole basis to deny the existence of the application. Real Estate Settlement Procedures Act of 1974 § 6, 12 U.S.C.A. § 2605(f); 12 C.F.R. § 1024.41.

WHEREFORE, Plaintiffs demand a trial by jury, an entry of judgment in the entire amount of damages to be determined at trial, statutory damages, together with an award of attorney's fees and litigation costs, as well as:
   a) To obtain injunctive relief for the upcoming foreclosure sheriff's sale;
   b) Restitution and refunds;
   c) Disgorgement;
   d) civil monetary penalties; and
   e) Other relief for the Defendants' violations of Federal consumer financial law

**DEMAND FOR TRIAL BY JURY**

Borrower demands trial by jury on all claims so triable.


                                   THE LAW OFFICES OF JOSEPH CHANG, L.L.C.
                                   *Attorneys for Plaintiffs*

Dated: July 6, 2018                BY: ***/s/ Joseph A. Chang***
                                         Joseph A. Chang