**REED SMITH LLP**
*Formed in the State of Delaware*
Diane A. Bettino, Esq.
Aaron M. Bender, Esq.
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Tel (609) 514-5955
Fax (609) 951-0824

Attorneys for Defendant Wells Fargo Bank, N.A.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NECTALIER GONZALEZ, III, STEPHANIE GONZALEZ, <br><br> Plaintiffs, <br><br> v. <br><br> WELLS FARGO HOME MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A. <br><br> Defendant. | Civil Action No. 3:18-cv-11405-BRM-DEA <br><br> DOCUMENT ELECTRONICALLY FILED <br> *Motion Returnable: January 7, 2019* |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION TO AMEND AND TO DISMISS THEIR COMPLAINT WITH PREJUDICE

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT................................................................................ 1

STATEMENT OF FACTS..................................................................................... 2

LEGAL ARGUMENT ......................................................................................... 4

STANDARD OF REVIEW................................................................................... 4

I.  PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF
    AGAINST DEFENDANT ............................................................................ 6

    A.  Plaintiffs Have No Viable Claim Under RESPA ................................. 6

        (i)  Defendant Is Not A Servicer Under RESPA In 2017 ............... 6

        (ii)  Plaintiffs Did Not Submit A Timely Loan Modification
              Application In 2017..................................................................... 8

        (iii)  Plaintiffs' Claims Related To An Alleged 2015 Loan
              Modification Review Are Time-Barred ..................................... 9

        (iv)  Plaintiffs Have No Viable Claims Under RESPA .................. 10

        (v)  Plaintiffs Have No Viable Claims Under 12 C.F.R. § 1024.35 11

    B.  Plaintiffs' Claims Fail Under The Entire Controversy Doctrine........ 12

CONCLUSION ................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ................................................................................. 5

Bailey v. Sullivan,
    885 F.2d 52 (3d Cir. 1990) ...................................................................... 4

Bell Atlantic v. Twombly,
    550 U.S. 554 (2007) ................................................................................. 5

In re Burlington Coat Factory Sec. Litig.,
    114 F.3d 1410 (3d Cir. 1997) .................................................................. 4

Cogdell v. Hosp. Ctr. at Orange,
    116 N.J. 7 (1989) ................................................................................... 13

Collas v. Wells Fargo Bank, N.A.
    2:17-cv-11866 (D.N.J. Dec. 11, 2018) ................................................. 14

Colonial Bldg-Loan Ass'n v. Mongiello Bros., Inc.,
    120 N.J. Eq. 270 (Ch. Div. 1936) ........................................................... 6

DiTrolio v. Antiles,
    142 N.J. 253 (1995) ............................................................................... 13

Genid v. Fed. Nat'l Mortg. Ass'n,
    No. 15-cv-06787 (PSG) (D.N.J. Aug. 2, 2016) ...................................... 7

Great Falls Bank v. Pardo,
    263 N.J. Super. 388 (1993), 263 N.J. Super. ....................................... 12

Leisure Tech. v. Klingbeil Holdings Co.,
    349 A.2d 96 (App. Div. 1975) .............................................................. 12

Manhattan Woods Golf Club, Inc. v. Arai,
    312 N.J. Super. 573 (App. Div. 1998) .................................................. 13

Massarsky v. Gen. Motors Corp.,
    706 F.2d 111 (3d Cir.), cert. denied, 464 U.S. 937 (1983) .................... 4

McNally v. Providence Washington Ins. Co.,
304 N.J. Super. 83 (App. Div. 1997) ................................................................ 13

Mori v. Hartz Mountain Dev. Corp.,
193 N.J. Super. 47 (App. Div. 1983) ................................................................ 14

In re Mullarkey
536 F.3d 215 (3d Cir. 2008) ............................................................................ 12

Napoli v. HSBC Mortg. Servs., Inc.,
No. 12-CV-222 (RMB-AMD), 2012 BL 218846 (D.N.J. Aug. 27.
2012) .............................................................................................................. 12

Puche v. Wells Fargo Bank, N.A.,
256 F. Supp. 3d 540 (D.N.J. 2017) .................................................................. 14

Riemer v. St. Clare's Riverside Med. Ctr.,
300 N.J. Super. 101 (App. Div.), certif. denied, 125 N.J. 188
(1997) ............................................................................................................. 13

Roman et. al., v. Wells Fargo Bank, N.A. et. al.,
2:16-cv-09472 (D.N.J. June 13, 2018)............................................................ 11

Sanchez v. Onewest Bank, FSB,
2013 WL 139870 (N.D. Ill. Jan. 10, 2013) ...................................................... 7

Somerset Trust Co. v. Stenberg,
238 N.J. Super. 279 (Ch. Div. 1989)................................................................ 13

Virginia Beach Fed. v. Bank of New York,
299 N.J. Super. 181 (App. Div. 1997) ............................................................... 6

**Statutes**

12 U.S.C. § 2605(i)(3)........................................................................................... 7

15 U.S.C. § 1640(e)............................................................................................... 10

**Rules**

Fed.R.Civ.P. 8(a) .................................................................................................. 5

Fed.R.Civ.P. 15(a) ................................................................................................ 4

**Regulations**

12 C.F.R. Part 1024, Supp. I, ¶ 41(b)(3) ...................................................... 8

12 C.F.R. § 1024.41(a) ........................................................................... 10

12 CFR § 1024.41(b) ............................................................................. 8

78 Fed. Reg. 60383 (Oct. 1, 2013) .......................................................... 9

78 Fed. Reg. 60397 (Oct. 1, 2013) .......................................................... 9

## PRELIMINARY STATEMENT

Plaintiffs Nectalier Gonzalez, III and Stephanie Gonzalez's ("Plaintiffs") latest claims against Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant") are still unsustainable based on the facts as alleged in their own proposed amended complaint and the public record. Plaintiffs failed to respond to Defendant's motion to dismiss their original Complaint and have now sought leave to file an amended complaint that has all of the same defects as their original Complaint. Simply, Plaintiffs are trying to manufacture a claim under the Real Estate Settlement Procedures Act ("RESPA") in response to Defendant obtaining a foreclosure judgment. As will be discussed below, Plaintiffs' RESPA claims fail for a multitude of reasons.

Beyond being substantively deficient, Plaintiffs' claims are nothing more than a collateral attack on a foreclosure that they already lost. Final judgment was entered on January 25, 2017 in the state court foreclosure action, docket number OCN-F-11103-16 (the "Foreclosure Action"). Any claims that Plaintiffs wanted to bring related to the loan at issue in this case needed to be brought in the Foreclosure Action. In fact, Plaintiffs filed a motion after the entry of final judgment seeking to stay the sheriff's sale. Plaintiffs clearly could have raised these issues in the Foreclosure Action, but chose to save their allegations for a later action. This is precisely the delay tactic that is barred by the Entire Controversy Doctrine.

## STATEMENT OF FACTS

On October 24, 2005, Nectalier Gonzalez, II entered into a $520,000.00 Note with FGC Commercial Mortgage Finance, DBA Fremont Mortgage. *Certification of Aaron M. Bender Ex. A ("Bender Cert.").* On that same date, Nectalier Gonzalez, III, Nectalier Gonzalez, Jr., Betty Gonzalez and Stephanie Gonzalez entered into a Mortgage with Mortgage Electronic Registration Systems, Inc. as nominee FGC Commercial Mortgage Finance, DBA Fremont Mortgage its successors and assigns which was secured by the property located at 268 Claudia Lane, Stafford, NJ 08050 (the "Property"). *Id.* The Mortgage was recorded on November 15, 2005 in the Office of the Clerk of Ocean County. *Id.*

On April 29, 2008, Mortgage Electronic Registration Systems, Inc. as nominee for FGC Commercial Mortgage Finance, DBA Fremont Mortgage its successors and assigns assigned the Mortgage to U.S. Bank National Association, as Trustee for MASTR Alternative Loan Trust 2006-HE1. The Assignment of Mortgage was recorded on May 19, 2009 in the Office of the Clerk of Ocean County. *Id.* On April 15, 2009, a corrective assignment of mortgage was executed to U.S. Bank National Association, as trustee for MASTR Alternative Loan Trust 2006-HE1. The Assignment of Mortgage was recorded in the Office of the Clerk of Ocean County on April 22, 2009. *Id.* On February 15, 2016, a corrective assignment of mortgage was executed to U.S. Bank National Association, as trustee for MASTR

- 2 -

Asset Back Securities Trust 2006-HE1 ("U.S. Bank").  The Assignment of Mortgage was recorded in the Office of the Clerk of Ocean County on February 25, 2016. *Id.*

Plaintiffs failed to make their monthly loan payments and their loan went into default on July 1, 2015.  *Bender Cert., Ex. A*.  In light of Plaintiffs' undisputed loan default, U.S. Bank filed the Foreclosure Action on April 20, 2016.  *Id*.  On January 25, 2017, The Honorable Paul Innes, P.J. Ch. granted U.S. Bank's application for final judgment in the Foreclosure Action.  *Bender Cert., Ex. B*.  A foreclosure sale was initially set for October 10, 2017.  *Bender Cert., Ex. C.*  On September 15, 2017, Plaintiffs claim they submitted a loan modification application which was denied.  *Complaint ¶ 16*.  Plaintiffs filed a motion to participate in mediation on October 13, 2017. *Bender Cert., Ex. D*.  That motion was opposed.  *Bender Cert., Ex. C.*  An order denying the motion was entered on November 3, 2017.  *Bender Cert., Ex. E.*

This collateral attack on the Foreclosure Action was filed on approximately July 6, 2018.  *Bender Cert., Ex. F.*  Defendant filed a motion to dismiss on October 1, 2018 which was returnable on November 5, 2018.  *Bender Cert., Ex. G.*  Plaintiffs did not oppose the motion and the Court entered an Order dismissing the action without prejudice on November 15, 2018.  *Id.*

On November 29, 2018, Plaintiffs filed a motion to amend seeking to raise the same deficient RESPA claims that they already asserted in their original Complaint. Plaintiffs cite attorney neglect for their failure to respond to Defendant's motion to

dismiss.   In their proposed amended complaint Plaintiffs simply add a vague reference to a loan modification review that they claim occurred in 2015.  Plaintiffs' proposed amendment is another delay tactic.  Plaintiffs' proposed amendment is futile.  Plaintiffs' have now had two chances to plead viable claims and have failed both times.  Plaintiffs should not be allowed to waste Defendant's and the Court's time and resources with continued meritless and untimely filings.  Plaintiffs' motion to amend should be denied and their claims should be dismissed with prejudice.

## LEGAL ARGUMENT
## STANDARD OF REVIEW

Fed.R.Civ.P. 15(a) grants free amendment of the pleadings "when justice so requires."  Leave to amend need not be granted where, as here, the proposed amendment would be futile.  See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997); Bailey v. Sullivan, 885 F.2d 52, 59 (3d Cir. 1990); Massarsky v. Gen. Motors Corp., 706 F.2d 111, 125 (3d Cir.) (holding leave to amend need not be granted where amendment would not withstand motion to dismiss), cert. denied, 464 U.S. 937 (1983)).  In "assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."  Burlington Coat Factory, 114 F.3d at 1434 (citations omitted).  Here, Plaintiffs' proposed amended complaint would not survive a motion to dismiss.  Accordingly, Plaintiffs' motion to amend should be denied.

To survive a Fed.R.Civ.P. 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 554, 570 (2007)); Fed.R.Civ.P. 8(a). Facial plausibility exists when the plaintiff pleads factual content allowing the court to draw the reasonable inference that the defendant may be liable for the misconduct alleged. *Id.* (citing Twombly, 550 U.S. at 556).

The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citation omitted). Furthermore, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

Plaintiffs' proposed amendments do not come close to meeting this standard. In addition, Plaintiffs have no justifiable reason except for attorney neglect for failing to respond to Defendant's initial motion, Plaintiffs' new claims lack factual support and are rife with the "blanket assertions of entitlement to relief" the Twombly standard guards against. The proposed amendments cannot survive a

motion to dismiss and as such, the proposed amendments are futile and must be denied.

## I.   PLAINTIFFS FAIL TO STATE A VIABLE CLAIM FOR RELIEF AGAINST DEFENDANT

Plaintiffs' only claims against Defendant are for allegedly violating RESPA. Plaintiffs have failed to meet the well-established pleading standards for a viable REPSA cause of action.

### A.   Plaintiffs Have No Viable Claim Under RESPA

Plaintiffs' RESPA causes of action allege a violation of 12 C.F.R. § 1024.41 for not providing them with a loan modification at some unspecified point in 2015 and after final judgment in the Foreclosure Action. Plaintiffs also allege that Defendant did not comply with some unspecified request for information. None of Plaintiffs' claims have any merit.

#### (i)   Defendant Is Not A Servicer Under RESPA In 2017

As a threshold matter, RESPA only applies to servicers. Upon the entry of final judgment of foreclosure, a mortgage "merges" into the final judgment and ceases to exist. Virginia Beach Fed. v. Bank of New York, 299 N.J. Super. 181, 188 (App. Div. 1997). Further, upon entry of final judgment in foreclosure, "every party ... has the right to assume that such decree represents the final determination of the debt and amount due thereunder[.]" Colonial Bldg-Loan Ass'n v. Mongiello Bros., Inc., 120 N.J. Eq. 270, 276 (Ch. Div. 1936).

Servicing is narrowly defined under RESPA as "receiving scheduled payments ... pursuant to the terms of any loan ... and making payments of principal and interest and such other payments ... as may be required pursuant to the terms of the loan." 12 <u>U.S.C.</u> § 2605(i)(3). Under this definition, once final judgment in foreclosure was entered, Wells Fargo is no longer "servicing" the mortgage loan as that term is defined in RESPA. <u>See</u>, <u>e.g.</u>, <u>Sanchez v. Onewest Bank, FSB</u>, 2013 WL 139870, *3 (N.D. Ill. Jan. 10, 2013) (where final judgment had been entered, the defendant was no longer servicing the loan as that term is used in RESPA).

As Judge Sheridan recently found when addressing this issue:

> Regulation X defines 'servicer' as 'person responsible for servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan.) Additionally, Seterus was no longer servicing the Property after the judgment of foreclosure. Under New Jersey law, once a judgment of foreclosure is entered, the mortgage loan is extinguished and merges into the final judgment of foreclosure.

> <u>Genid v. Fed. Nat'l Mortg. Ass'n</u>, No. 15-cv-06787 (PSG) (D.N.J. Aug. 2, 2016).

Since final judgment had been entered well prior to the time that Plaintiffs claim they submitted loan modification paperwork on September 15, 2017, Wells Fargo does not fall under RESPA's definition of a servicer. Since Wells Fargo was not a servicer under RESPA after final judgment was entered, Plaintiffs' RESPA

claims related to events after final judgment are unsustainable and must be dismissed.

### (ii)    Plaintiffs Did Not Submit A Timely Loan Modification Application In 2017

Even if Wells Fargo could be considered a "servicer" under RESPA, Plaintiffs failed to submit a timely loan modification application. Plaintiffs claim that Wells Fargo did not properly respond to their loan modification application. Even if this were true, which it is not, 12 CFR § 1024.41(b) provides that it only applies "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale." Here, Plaintiffs allege that they submitted a loss mitigation application on September 15, 2017. *Complaint ¶ 16.* Sheriff's sale was initially scheduled for October 10, 2017. *Bender Cert., Ex. C.* Thus, Plaintiffs did not submit any loss mitigation application, complete or incomplete, 45 days prior to the scheduled sale date.

The fact that the foreclosure sale was postponed or rescheduled multiple times does not change the result. The CFPB has explicitly addressed this point: "The protections under §1024.41 that have been determined to apply to a borrower pursuant to §1024.41(b)(3) remain in effect thereafter, even if a foreclosure sale is later scheduled or rescheduled." 12 C.F.R. Part 1024, Supp. I, ¶ 41(b)(3). In fact, during the final rulemaking leading to the promulgation of this particular official staff comment, the CFPB considered changing the rule so that rescheduling a

foreclosure sale that lengthened the date between the receipt of the original loss mitigation application and the foreclosure sale, would provide the consumer with the benefit of the longer period.  The CFPB rejected such an application of the rule: "The Bureau notes that structuring the rule such that a borrower's rights may be added or removed because a foreclosure sale was moved or rescheduled would not provide the certainty or simplicity created by the proposed rule.  Further, the Bureau is concerned that if moving a foreclosure sale to a later date could trigger new protections, such a policy may provide a disincentive for a servicer to reschedule a foreclosure sale for a later date."  78 Fed. Reg. 60383, 60397 (Oct. 1, 2013).

Therefore, because Plaintiffs submitted their alleged loss mitigation application less than 45 days before the designated foreclosure sale date, the Plaintiffs were not entitled to the protections of 12 C.F.R. § 1024.4, and the fact that the foreclosure sale was rescheduled is of no consequence to this Court's analysis.

In short, Plaintiffs' untimely loan modification application takes this case out of the ambit of the loss mitigation rules.

### (iii)   Plaintiffs' Claims Related To An Alleged 2015 Loan Modification Review Are Time-Barred

In a tacit admission that their claims related to an alleged 2017 loan modification review fail as a matter of law, Plaintiffs throw in a vague reference to "loss mitigation in 2015."  Plaintiffs, of course, provide no facts to support this claim.  The lack of detail alone mandates the dismissal of the claim.  The reason

that Plaintiffs do not provide any facts is that they know their claims related to a 2015 loan modification review, whatever they may be, are time-barred and otherwise meritless. Plaintiffs try to plead around these deficiencies by providing no detail whatsoever.

The statute of limitations for a RESPA claim is either one or three years. See 15 U.S.C. § 1640(e). Plaintiffs did not raise any claims related to an alleged issue in 2015 until the end of 2018. Plaintiffs' claims related to 2015 are time-barred.

### (iv)   Plaintiffs Have No Viable Claims Under RESPA

Even if Plaintiffs could overcome all of the above, which they cannot, Plaintiffs do not specify any actions by Wells Fargo which would constitute a violation of RESPA.

In reality, Plaintiffs seem to be complaining that they were denied for a loan modification. However, this does not give rise to a cause of action. Section 1024.41(a) provides for the enforcement of, and limitations on, a borrower's rights under RESPA related to loss mitigation. This section specifically provides that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a). Thus, it is clear that a servicer does not have any obligation to provide a borrower with a loan modification. Instead, Section 1024.41 governs the process that must be followed. Section 1024.41 provides a borrower with a right to specified process not any specific result.

In this instance, Plaintiffs had no right to a loan modification and were properly denied. Plaintiffs' new allegations related to a 2015 loss mitigation review are clearly after-the-fact creations by Plaintiffs' counsel as evidenced by the complete lack of factual support for this allegation. Plaintiffs' counsel's *modus operandi* is to try manufacture RESPA claims where they do not exist. See Roman et. al., v. Wells Fargo Bank, N.A. et al, 2:16-cv-09472 (D.N.J. June 13, 2018). Plaintiffs' proposed RESPA claims are deficiently plead and fail as a matter of law.

      **(v)**    **Plaintiffs Have No Viable Claims Under 12 C.F.R. § 1024.35**

Even if Wells Fargo could be considered a servicer and Plaintiffs had submitted a complete and timely application, Plaintiffs have not properly asserted a claim based on a failure to respond to a notice of error under 12 C.F.R. § 1024.35. Plaintiffs make a vague allegation insinuating that Wells Fargo violated 12 C.F.R. § 1024.35, but they are careful not to state that Wells Fargo did not reply to their purported September 26, 2017 notice of error. Plaintiffs do not and cannot allege that Wells Fargo did not respond to their September 26, 2017 correspondence because they know full well that Wells Fargo responded to their correspondence on October 4, 2017. *Bender Cert., Ex. H.* Plaintiffs do not assert any facts to support an allegation that Wells Fargo did not respond to their September 26, 2017 correspondence. Wells Fargo did respond to Plaintiffs correspondence, Plaintiffs

simply did not like the response.  Any claim under 12 C.F.R. § 1024.35 that Plaintiffs may be trying to assert is meritless.

**B.      Plaintiffs' Claims Fail Under The Entire Controversy Doctrine**

All of Plaintiffs' claims involve allegations related to events that occurred during the Foreclosure Action.  As such, the Entire Controversy Doctrine bars the claims here.

The Entire Controversy Doctrine, codified as New Jersey Court Rule 4:30(a), mandates that Plaintiffs' claims regarding the mortgage loan and the right to foreclose were required to be adjudicated in the Foreclosure Action.  Napoli v. HSBC Mortg. Servs., Inc., No. 12-CV-222 (RMB-AMD), 2012 BL 218846, at *3 (D.N.J. Aug. 27. 2012) (upholding Entire Controversy Doctrine, and holding that borrowers must raise foreclosure claims in chancery action).  The Entire Controversy Doctrine extends to claims that are germane to the Foreclosure Action.  See In re Mullarkey, 536 F.3d 215, 299 (3d Cir. 2008).  Germane claims are defined as those claims "arising out of the mortgage transaction which is the subject of the foreclosure action."  Leisure Tech. v. Klingbeil Holdings Co., 349 A.2d 96, 97 (App. Div. 1975). There are only three elements that must be shown in order to establish the right to foreclose.  To prevail in a foreclosure action a lender only needs to prove: the validity of the loan documents (the note and mortgage); the alleged default; and the right to foreclose.  Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (1993), 263 N.J.

Super. at 394; Somerset Trust Co. v. Stenberg, 238 N.J. Super. 279, 283-84 (Ch. Div. 1989).

The Entire Controversy Doctrine requires the joinder in one action of all claims and all parties related to a single underlying transaction. See Manhattan Woods Golf Club, Inc. v. Arai, 312 N.J. Super. 573, 577 (App. Div. 1998) (citations omitted); Riemer v. St. Clare's Riverside Med. Ctr., 300 N.J. Super. 101 (App. Div.), certif. denied, 125 N.J. 188 (1997). The threefold objectives behind the Entire Controversy Doctrine are to: (1) encourage comprehensive and conclusive determination of a legal controversy; (2) achieve party fairness, including for both parties before the court, as well as prospective parties; and (3) promote judicial economy and efficiency by avoiding fragmented, multiple, and duplicative litigation. Riemer, 300 N.J. Super. at 108-09 (citations omitted).

The Entire Controversy Doctrine is also intended to "conserve judicial resources" because "judicial energy is not inexhaustible or endlessly renewable." Cogdell v. Hosp. Ctr. at Orange, 116 N.J. 7, 24 (1989) (observing that the Entire Controversy Doctrine controls "litigational extravagance"). It requires joinder of all legal and equitable claims relating to a single underlying transaction in a single action, not piecemeal litigation. McNally v. Providence Washington Ins. Co., 304 N.J. Super. 83 (App. Div. 1997); see also DiTrolio v. Antiles, 142 N.J. 253, 267-68 (1995) ("It is the core set of facts that provides the link between distinct claims

- 13 -

against the same or different parties and triggers the requirement that they be determined in one proceeding."). "[T]he entire controversy doctrine applies not only to matters <u>actually</u> litigated, but to all aspects of a controversy that <u>might have thus been litigated</u> and determined." <u>Mori v. Hartz Mountain Dev. Corp.</u>, 193 N.J. Super. 47, 56 (App. Div. 1983) (emphasis in original).

This Court recently reviewed similar issues in the published decision of <u>Puche v. Wells Fargo Bank, N.A.</u>, 256 F. Supp. 3d 540 (D.N.J. 2017).  In that matter, like here, plaintiffs brought various claims related to events that occurred while a foreclosure action was pending including allegations related to a loan modification review and RESPA.  In response to a motion to dismiss filed by defendant, the district court found that the claims filed by plaintiffs related directly to the mortgage at issue in the foreclosure action, including RESPA claims, were germane to the foreclosure action and should have been handled by the state court. *Id.*  The Court succinctly stated, "[i]f, during the pendency of litigation, claims arise which are part of the entire controversy, the claimant must seek leave to file supplemental pleadings.  If the claimant fails to do so, they are then barred from raising those claims in a subsequent suit." *Id.*  Consequently, the district court determined that plaintiffs' claims were barred by the Entire Controversy Doctrine. *Id.*  The ruling in <u>Puche</u> was recently followed in the case of <u>Collas v. Wells Fargo Bank, N.A</u>. 2:17-cv-11866 (D.N.J. Dec. 11, 2018).

- 14 -

As in <u>Puche</u> and <u>Collas</u>, Plaintiffs' claims are barred by the Entire Controversy Doctrine.  Plaintiffs could have sought to raise these claims in the Foreclosure Action, but chose to save them to bring this collateral attack.  Therefore, Plaintiffs' claims should be dismissed here.

Plaintiffs are not allowed to belatedly commence the present action to assert legal claims that they withheld in the Foreclosure Action.  New Jersey's Entire Controversy Doctrine does not permit such tactics.

## CONCLUSION

For all of the reasons stated herein, Defendant respectfully requests that the Court deny Plaintiffs' attempt to amend their Complaint as futile and dismiss the matter with prejudice.

**REED SMITH LLP**
*Attorneys for Defendant*

By: <u>s/ Aaron M. Bender</u>
    Aaron M. Bender, Esq.

Dated: December 26, 2018