**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NECTALIER GONZALEZ, III, et al. | : |
| Plaintiffs, | : Civil Action No. 18-11405 (BRM)(DEA) |
| v. | : **REPORT & RECOMMENDATION** |
| WELLS FARGO HOME MORTGAGE, | : |
| Defendant. | : |

ARPERT, Magistrate Judge

This matter comes before the Court on a motion by Plaintiffs Nectalier Gonzalez III and Stephanie Gonzalez (together, "Plaintiffs") for leave to amend the Complaint. Defendant Wells Fargo Home Mortgage ("Wells Fargo" or "Defendant") opposes the motion. The Court decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons herein, it is respectfully recommended that Plaintiffs' motion be denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Plaintiffs commenced this action against Wells Fargo on July 6, 2018, asserting violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and RESPA's Regulation X, 12 C.F.R part 1024, in connection with Plaintiffs' requests for a modification of their mortgage loan. On October 1, 2018, Defendant moved to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). On November 15, 2019, having received no opposition, the Hon. Brian R. Martinotti, U.S.D.J., granted the motion. Judge Martinotti dismissed the Complaint without prejudice, and the matter was closed. ECF No. 5. Pursuant to Judge Martinotti's Order, Plaintiffs had 14 days to submit "a motion seeking the appropriate relief" in order to avoid dismissal with prejudice. This motion followed.

1

According to the proposed Amended Complaint,[1] Plaintiffs are owners of a certain residential property located in Stafford, New Jersey. They purchased the property in 2003. Although not directly stated in the proposed Amended Complaint, the Court infers that the Plaintiffs obtained a mortgage loan in connection with the purchase of the property. Defendant was the servicer of that loan.

In 2015, Plaintiffs "encountered temporary financial difficulties." ECF No. 6-2 at 4. As a result, they "began communications and submitted documents to procure a mortgage loan modification from Defendant." *Id.* Plaintiffs allege that at some point prior to October 2015 they submitted "documents for loss mitigation" to Defendant, but Defendant "aggressively delayed review of Plaintiffs['] submission." *Id.*

On April 16, 2016, Wells Fargo, on behalf of the mortgage holder, filed a foreclosure Complaint in the Superior Court of New Jersey. *See* ECF No. 7-2. That action bears Docket No. F-011103-16. Final Judgment in the foreclosure action was entered on January 25, 2017. ECF No. 7-3.

Several months later, on September 15, 2017, Plaintiffs submitted a completed loan modification application to Defendant. Defendant responded shortly thereafter, stating that it would not consider Plaintiffs for loss mitigation. On September 26, 2017, Plaintiffs sent Defendant a Notice of Error and Request for Information pursuant to 12 C.F.R. §1024.35 and §1024.36. The next day Defendant acknowledged in writing that it received Plaintiffs' requests and concerns. Defendant, however, refused to review Plaintiffs loan for loss mitigation alternatives to foreclosure.

---

[1] Unless otherwise specified, the facts recited herein are taken from the allegations in the proposed Amended Complaint. *See* ECF No. 6-2. They do not represent factual findings by the Court. The Court notes that Defendant has submitted records of the state court foreclosure proceeding with its opposition. As Plaintiffs have not disputed the authenticity of these records, the Court will take judicial notice of the existence of these court documents.

2

In October 2017, Plaintiffs moved in the foreclosure action for an Order permitting the parties to participate in the Court's mediation program.  ECF No. 7-5.  That motion was denied by Order dated November 3, 2017, and the Sheriff's sale was adjourned to January 16, 2018.  ECF No. 7-6.  Plaintiffs thereafter filed the Complaint in this action on July 6, 2018.

The proposed Amended Complaint contains two counts.  The first alleges a violation of 12 C.F.R. § 1024.41(b) based upon, *inter alia*, Defendant's alleged failure to acknowledge and review in good faith Plaintiffs' loss mitigation application "for years." ECF No. 6-2 at ¶ 36.  Count One also alleges that Defendant failed to inform Plaintiffs whether "any documents [were] missing in Plaintiffs['] loss mitigation application for months in 2015." *Id.* at ¶ 32.  Court Two alleges a violation of 12 C.F.R. § 1024.35(c) based upon Defendant's alleged failure to properly respond to the Notice of Error submitted by Plaintiffs.

**II.   DISCUSSION**

A.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 15(a), once a party's time to amend as a matter of course expires, "a party may amend its pleading only with the opposing party's written consent or the court's leave", and "[t]he court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision to grant leave to amend rests within the sound discretion of the trial court.  *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970).  In determining a motion for leave to amend, courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment.  *See Great Western Mining &*

*Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Wells Fargo opposes Plaintiffs' motion, arguing that the proposed Amended Complaint is futile.  The futility analysis with respect to a motion to amend is essentially the same as a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). To pass muster, the proposed amended claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"[G]iven the liberal standard for the amendment of pleadings, 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'" *Brainbuilders, LLC v. Optum, Inc.*, No. CV 18-638, 2019 WL 2315389, at *5 (D.N.J. May 31, 2019).  Therefore, "[i]f a proposed amendment is not clearly futile, then denial of leave to amend is improper." *Id.*

**B.  Analysis**

Plaintiffs bring this action for violations of Regulation X, 12 C.F.R. § 1024 *et seq.*, which, as noted earlier, was promulgated under RESPA, 12 U.S.C. § 2601 *et seq.*  Congress enacted RESPA "to protect home buyers from material nondisclosures in settlement statements and abusive practices in the settlement process, both in the actual settlement process and in the servicing of a federally related mortgage loan." *Gehman v. Argent Mortg. Co. LLC*, 726 F. Supp. 2d 533, 540 (E.D. Pa. 2010) (quotation marks omitted).  Regulation X sets forth, *inter alia*, certain requirements that servicers must comply with in servicing a borrower's mortgage loan. *See* 12 C.F.R. § 1024.30. "Failure to comply with these requirements creates liability for a

servicer, and a borrower may then enforce these rights pursuant to 12 U.S.C. § 2605(f).” 12 C.F.R. § 1024.41(a); *Susan Grembowiec v. Select Portfolio Servicing, Inc.*, No. 18-16885, 2019 WL 3183588, at *3 (D.N.J. July 16, 2019).

Defendant argues that the Court must deny Plaintiffs' motion because (1) Plaintiffs' claims are barred by the entire controversy doctrine; and (2) the proposed Amended Complaint does not plead a viable RESPA claims against Wells Fargo.  The Court addresses each in turn below.

1.  Entire Controversy Doctrine

New Jersey's entire controversy doctrine, codified as New Jersey Rules of Court Rule 4:30A, requires litigants to assert all claims relating to the controversy between them in one action and to join all parties with an interest in the controversy, or be forever barred from bringing a subsequent action involving the same underlying facts. *Bounasissi v. PHH Mortg. Servs. Inc.*, No. 17-1028, 2019 WL 2571169, at *2 (D.N.J. June 21, 2019).  "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine."  N.J. Ct. Rule 4:30A. Generally, "[t]he entire controversy rule applies in federal court where there has been a previous state court action involving the same transaction." *Davis v. Fein Such Kahn & Shepard PC*, No. 18-8560, 2019 WL 1789471, at *7 (D.N.J. Apr. 24, 2019) (quoting *Puche v. Wells Fargo NA*, 256 F. Supp. 3d 540, 546 (D.N.J. 2017).  The doctrine extinguishes any later federal-court claim that could have been joined but was not raised in the prior state action.

In the context of foreclosure proceedings, the entire controversy doctrine extends only to those claims that are "germane" to the foreclosure.  As recently explained by the Third Circuit,

> New Jersey's entire controversy doctrine embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one

5

> court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy. We have characterized the doctrine as New Jersey's specific, and idiosyncratic, application of traditional res judicata principles. The doctrine applies in federal courts when there was a previous state-court action involving the same transaction.
>
> There is no doubt that the entire controversy doctrine applies to foreclosure proceedings, but only to claims that could have been filed in the foreclosure action, that is, only to claims that were germane to the foreclosure proceeding.

*Shibles v. Bank of Am., N.A.*, 730 F. App'x 103, 106 (3d Cir. 2018) (citations and quotations omitted). "Claims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action." *Coleman v. Chase Home Fin., LLC*, 446 F. App'x 469, 472 (3d Cir. 2011). Thus, courts have found that "[c]laims that loan servicers violated their statutory duties under RESPA are germane to foreclosure proceedings on the mortgaged property." *Puche*, 256 F. Supp. 3d at 549; *see also Vasquez Rodriguez v. Wells Fargo Bank, N.A.*, No. 18-7959, 2019 WL 1529846, at *4 (D.N.J. Apr. 9, 2019) (finding RESPA claim germane to foreclosure action and thus barred by entire controversy doctrine); *Collas v. Wells Fargo Bank, N.A.*, No. 17-11866, 2018 WL 6499706, at *4 (D.N.J. Dec. 11, 2018) (same); *Siljee v. Atl. Stewardship Bank*, No. 15-CV-1762, 2016 WL 2770806, at *10 (D.N.J. May 12, 2016) (same).

Count One of the proposed Amended Complaint alleges that Plaintiffs submitted loss mitigation requests to Defendant on two occasions, once in 2015 and again in 2017. To the extent that Plaintiffs allege RESPA violations based upon the 2015 submission, the claims would be precluded by the entire controversy doctrine. Such claims relate to the mortgage underlying the foreclosure action and are, therefore, germane to that action. As the foreclosure action was filed in April 2016 (with final judgment being entered in January 2017), Plaintiffs' claims in connection with their 2015 application clearly could have been raised in the foreclosure action.

Plaintiffs, however, failed to do so. Consequently, their claims are now barred, and that part of Count One premised upon the 2015 application is futile.[2]

The claims based upon Plaintiffs' 2017 application stand on different footing.[3] Plaintiffs' second application for loss mitigation and related communications were submitted to Defendant in September 2017, well after final judgment was entered in the foreclosure action. As such, it appears that the conduct complained of in Court One and Count Two in connection with the second application could not have been raised in the foreclosure action. Accordingly, such claims are not barred by the entire controversy doctrine.

2.  RESPA Claims

Having determined that the Plaintiffs' claims in connection with the 2017 loss mitigation application are not precluded by the entire controversy doctrine, the Court must determine if the allegations in the proposed Amended Complaint with regard to that application establish a plausible claim. Count One alleges a violation of 12 C.F.R. § 1024.41(b), which provides as follows:

> (b) Receipt of a loss mitigation application.
>
> (1) Complete loss mitigation application. A complete loss mitigation application means an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower. A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application.
>
> (2) Review of loss mitigation application submission.

---

[2] Defendant also argues that claims relating to the 2015 application are barred by RESPA's three-year statute of limitations. *See* 12 U.S.C. § 2614. Although facts may ultimately show that certain of Plaintiffs' claims are time-barred, it is unclear from the face of the proposed Amended Complaint precisely when Plaintiffs' claims accrued. Therefore, the Court cannot find the claims to be time-barred at this stage of the case. *See Wisniewski v. Fisher*, 857 F.3d 152, 157 (3d Cir. 2017) ("A complaint is subject to dismissal for failure to state a claim on statute of limitations grounds only when the statute of limitations defense is apparent on the face of the complaint.")

[3] For the purposes of this motion only, the Court considers Plaintiffs' 2017 application as being separate from, and not a supplement to or continuation of, the 2015 application.

7

> (i) Requirements. If a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:
>
> (A) Promptly upon receipt of a loss mitigation application, review the loss mitigation application to determine if the loss mitigation application is complete; and
>
> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and [a reasonable date by which the borrower should submit the documents and information necessary to make the loss mitigation application complete]. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

12 C.F.R. § 1024.41(b)(2)(i)(A)-(B).

Count Two alleges a violation of 12 C.F.R. §1024.35, which describes certain duties owed by mortgage loan servicers to borrowers. Under RESPA, a servicer is required to respond to any "qualified written request" from a borrower.[4] 12 U.S.C. § 2605(e)(1). A notice of error ("NOE") is defined in § 1024.35(a) as "any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred." 12 C.F.R. § 1024.35(a). Generally, within five days of receiving a NOE, a servicer must issue a written response acknowledging receipt and notifying the borrower either that the error has been corrected or that the servicer, after a reasonable investigation, has determined that no error occurred. § 1024.35(e)(1)(i)(A)-(B):

---

[4] This is defined as a "written correspondence" from the borrower to the servicer that (1) identifies the borrower and the borrower's account; and (2) either asserts an error in the borrower's account or requests information related to the servicing of the borrower's account. 12 U.S.C. § 2605(e)(1).

Defendant argues that these claims are futile because it was not no longer a "servicer" as defined by the relevant provisions at the time Plaintiffs submitted their 2017 application. RESPA defines "servicer" as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making payments of principal and interest and such other payments ... as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). According to Defendant, once final judgment was entered in the foreclosure action, the mortgage was extinguished and, therefore, it was no longer "servicing" the mortgage loan as defined by RESPA.

Under New Jersey law, a mortgage loan is extinguished once a judgment of foreclosure is entered. *Virginia Beach Fed. v. Bank of N.Y./Nat'l Community Div.*, 299 N.J. Super. 181, 188 (App. Div. 1998). As such, several courts in this district have found the above-referenced RESPA protections inapplicable after entry of final judgment of foreclosure. *See Roman v. Wells Fargo Bank, N.A.*, 16-9472(CCC), 2018 WL 2958583, at *2 (D.N.J. June 13, 2018) ("Defendants were not 'servicers' under RESPA [because] Plaintiffs submitted their loss modification application [after foreclosure judgment]"); *Kajla v. U.S. Bank Nat'l Ass'n for Credit Suisse First Boston MBS ARMT 2005-8*, No. 17-8953(AET), 2018 WL 1128498, at *7 (D.N.J. Mar. 1, 2018) ("By the time Plaintiff sent his letters, the mortgage loan was already extinguished and Plaintiff could not avail himself of RESPA's protections."); *Perez v. Seterus, Inc.*, No. 17-5862(JLL) 2017 WL 5513687, at *4 (D.N.J. Nov. 16, 2017) ("no obligation to respond" to QWR that was sent after the entry of final judgment in foreclosure because the "mortgage loan was extinguished" before communication was sent); *Genid v. Fannie Mae*, No. 15-06787(PGS), 2016 WL 4150455, at *3, (D.N.J. Aug. 2, 2016) ("Following the final judgment

9

of foreclosure, Plaintiffs no longer owned the Property and [Defendant] could not be their servicer."). *But see Mannarino v. Ocwen Loan Servicing, LLC.*, No. 17-2564(PGS), 2018 WL 1526558, at *5 (D.N.J. Mar. 28, 2018) (distinguishing *Genid* because there "the claims occurred … subsequent to the foreclosure sale; here the events occurred after judgment, but before the foreclosure sale."); *Loconsole v. Wells Fargo Mortg.*, No. 17-8362, 2018 WL 3158816, at *6 (D.N.J. June 28, 2018) (assuming only for purposes of the motion being addressed that "RESPA's loss mitigation procedures apply after a New Jersey court has entered a final judgment of foreclosure but before a foreclosure sale has taken place").

Here, the parties do not dispute that final judgment in the foreclosure action was entered in January 2017. This was many months prior to Plaintiffs sending Defendant their loan second loan modification application. Plaintiffs' mortgage loan was extinguished when final judgment was entered and, under the weight of authority in this District, Defendant was no longer servicing the loan. Accordingly, Plaintiffs have failed to state a plausible claim under RESPA with respect to the 2017 loss mitigation application.

Moreover, even if the Court had concluded otherwise and Defendant could be considered a "servicer" after entry of the final judgment of foreclosure, it appears Plaintiffs' claims would nevertheless fail. First, the obligations of loan servicers under 12 C.F.R. § 1024.41 are triggered only upon receipt of a <u>timely</u>, complete loss mitigation application from a borrower. Under § 1024.41(b)(2), a servicer is required to begin a review of a complete loss mitigation application only "[i]f a servicer receives a loss mitigation application 45 days or more before a foreclosure sale." 12 C.F.R. § 1024.41 (b)(2)(i). Here, the proposed Amended Complaint states that Plaintiffs submitted their application September 15, 2017, just 24 days prior to the scheduled

10

foreclosure sale on October 10, 2017.  *See* Notice of Sheriff's Sale at ECF No. 7-4 (Ex. O).  The application was, therefore, untimely.

Second, Plaintiffs have not pled facts showing that Defendant violated 12 C.F.R. § 1024.35 by failing to respond to Plaintiffs' purported NOE. The proposed Amended Complaint is simply too vague in this regard, stating first that Defendant acknowledged receipt of the NOE, but later making an unsupported reference to "Defendant's actions in failing to properly respond" to the NOE.  ECF No. 6-2 at ¶ 45.  These assertions are simply insufficient to state a plausible claim under the relevant standard.[5]

### III. CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs' proposed Amended Complaint is futile and Plaintiffs' motion for leave to amend should be denied.  Consequently,

**IT IS** on this 25th day of July, 2019,

**RECOMMENDED** that Plaintiffs' motion for leave to file an Amended Complaint [ECF No. 6] be **DENIED**; and it is further

**ORDERED** that pursuant to Fed. R. Civ. P. 72, objections to this Report and Recommendation shall be filed within 14 days after service hereof. Any party may respond to another party's objections within 14 days after being served with a copy thereof; and it is further

**ORDERED** that the Clerk is to terminate the motion at ECF No. 6 and activate this Report and Recommendation.

/s/ Douglas E. Arpert
DOUGLAS E. ARPERT
United States Magistrate Judge

---

[5] Moreover, while not a consideration in the disposition of this motion, the Court notes that Defendant, contending that it properly responded to Plaintiffs' NOE, has provided the Court with a copy of an October 4, 2017 response to Plaintiffs.  *See* ECF No. 7-9.

11